[No. A025458. First Dist., Div. Five. Oct. 16, 1984.]

ALPHA BETA, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
RITA NAHM, Real Party in Interest.

COUNSEL

Henry F. Telfeian, Patrick W. Jordan and McLaughlin & Irvin for Petitioners.

No appearance for Respondent.

Steven R. Cavalli and Gwilliam & Ivary for Real Party in Interest.

OPINION

**KING, J.**—Rita Nahm was employed by Alpha Beta, Inc., from May 1980 through February 1982, and throughout that period was subject to a collective bargaining agreement between Local 870, Retail Clerks Union AFL-CIO, and Alpha Beta. Several months after her employment terminated Nahm sued Alpha Beta and its supervisory employees Cole and Coppin, in respondent superior court, for damages for intentional infliction of emotional distress. Defendants moved for summary judgment upon the theory that Nahm's tort action in respondent court was preempted by federal labor law. Respondent court denied defendants' motion; defendants petitioned this court for a writ of prohibition or mandate; we summarily denied the petition. The Supreme Court granted hearing and retransferred the matter to us with directions to issue an alternative writ, referring to *Beers* v. *Southern Pacific Transp. Co.* (9th Cir. 1983) 703 F.2d 425. We issued the alternative writ, and the matter has been argued and submitted to us for decision. We conclude that respondent court's order was correct. Accordingly we vacate the alternative writ and deny the peremptory writ.

Nahm's complaint in respondent court alleged in pertinent part that "[a]t all times herein mentioned, defendant . . . COLE was the assistant store manager of the above mentioned Alpha Beta store. At all times herein mentioned, defendant . . . COPPIN was the manager of the bakery of the above mentioned Alpha Beta store. Commencing in approximately September of 1981, defendants above named and each of them, participated in episodes and encounters designed to harass, humiliate and upset plaintiff by, among

other things, making rude and humiliating comments to and about plaintiff in front of customers and co-employees; decreasing her number of working hours below those of other employees who had less or the same seniority as plaintiff; degrading her job performance in front of others; causing plaintiff to perform the job duties of others; asking plaintiff to stay on and work overtime and then verbally abusing and chastising her for doing so; making false statements in documents in plaintiff's personnel file to make it look as if plaintiff was being insubordinate to superiors; discriminating against plaintiff in favor of other employees; using foul and abusive language directed at plaintiff; refusing to honor plaintiff's request to be transferred to another store." The complaint further alleges that each defendant acted in all relevant respects as the agent of each other defendant, and that the described conduct was "outrageous" and caused Nahm emotional injury for which she is entitled to both compensatory and punitive damages.

There is no indication in the record before us that Nahm's allegations are in any way related to the termination of her employment.

Defendants moved for summary judgment on the sole ground "that the Complaint herein fails to state a cause of action against defendants in that it is preempted by federal law." In support of their motion defendants placed before the court the collective bargaining agreement, calling attention to its provision for processing "grievances" by voluntary adjustment or arbitration. The collective bargaining agreement defines a "grievance" as "a dispute, difference of opinion between the parties, and grievance of employees involving or arising out of the meaning, interpretation, application or alleged violation of this Agreement, including the arbitrability of all such matters." By the declaration of Alpha Beta's director of industrial relations defendants asserted that "[e]ach and every one of these incidents could have been the subject of a grievance and processed through the grievance and arbitration procedure contained in . . . the collective bargaining agreement." Thus, defendants argued, "plaintiff's complaint is preempted by federal law in that the allegations therein constitute a single claim for breach of a collective bargaining agreement, the exclusive remedy for which is the grievance and arbitration provision contained in said agreement."

Nahm filed only legal argument in opposition. Respondent court denied defendants' motion. This writ petition followed. The only issue before this court is whether defendants' uncontradicted showing is sufficient to demonstrate as a matter of law that Nahm's claim cannot be maintained in a California trial court at this time. (Cf. *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].)

Defendants identify two "questions presented for review":

"1. Does federal law preempt a state tort claim based on allegations identical to grievable events under a collective bargaining agreement?

"2. Can a state tort claim be maintained where in adjudicating the complaint the trial court will necessarily be required to interpret and apply a collective bargaining agreement?"

As stated and argued by defendants, these questions compound elements of two doctrines: Federal preemption (cf. *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 242, 243 [3 L.Ed.2d 775, 782, 79 S.Ct. 773]; *Sarro* v. *Retail Store Employees Union* (1984) 155 Cal.App.3d 206, 214-216 [202 Cal.Rptr. 102]) and exhaustion of contractual arbitration procedures (*Johnson* v. *Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 679 [139 Cal.Rptr. 136]; cf. Labor Management Relations Act § 203(d) (29 U.S.C. § 173 (d)); *Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343].)

█ We conclude that defendants' reliance on the rhetoric of federal preemption decisions is misplaced.

Defendants cite several cases decided under the Railway Labor Act (RLA) (45 U.S.C. § 151 et seq.). █ But to the extent that this action is affected at all by federal labor law, it is subject not to the RLA but rather to the general provisions of the National Labor Relations Act (NLRA) and the Labor Management Relations Act (LMRA) (29 U.S.C. § 141 et seq.).

█ The RLA expressly provides for administrative determination of disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . ." (45 U.S.C. § 153, subd. First (i).) It is now well established that these procedures are compulsory, and exclusive of judicial proceedings, in any dispute subject to the RLA. (*Andrews* v. *Louisville & Nashville R. Co.* (1972) 406 U.S. 320, 322-326 [32 L.Ed.2d 95, 98-100, 92 S.Ct. 1562]; *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367, 1369-1370.) "[T]he compulsory character of the administrative remedy provided by the Railway Labor Act for disputes such as that between petitioner and respondent stems not from any contractual undertaking between the parties but from the Act itself . . . ." (*Andrews* v. *Louisville & Nashville R. Co., supra*, 406 U.S. 320, 323 [32 L.Ed.2d 95, 99].) Our attention has been directed by our Supreme Court to *Beers* v. *Southern Pacific Transp. Co., supra*, 703 F.2d 425, which we had rejected as inapplicable to this case when we summarily denied defendants' petition. Beers, employed under the terms of a collective bargaining agreement subject to the RLA, was discharged for alleged insubordination arising out of union activities. His state-

court action for intentional infliction of emotional distress and violations of his rights under the RLA was removed to federal district court where summary judgment for defendants was granted on the ground that the court lacked subject-matter jurisdiction. The court of appeals affirmed the district court's finding that the controversy was "a minor dispute within the exclusive province of the grievance mechanisms of the Railway Labor Act" (703 F.2d at p. 429), relying on *Magnuson* v. *Burlington Northern, Inc., supra,* which in turn followed *Andrews* v. *Louisville & Nashville R. Co., supra.*

The NLRA and LMRA contain no provision directly comparable to "the exclusive . . . grievance mechanisms" of the RLA. Section 203(d) of the LMRA (29 U.S.C. § 173 (d)) does provide that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievances disputes arising over the application or interpretation of an existing collective-bargaining agreement," and the declaration that arbitration of grievance is "the very heart of the system of industrial self-government" (*Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 581 [4 L.Ed.2d 1409, 1416, 80 S.Ct. 1347]) has been often reaffirmed. But "the difference between the impact of the NLRA and the RLA has significance. The focus of the NLRA is on specific conduct that Congress has deemed subject to either prohibition or protection, 29 U.S.C. §§ 157-158. Often . . . it is the objective of certain conduct, rather than the mere exercise thereof, that is relevant to determining whether actions are protected or prohibited by the NLRA. In contrast, the RLA has made *any* grievance arising out of the collective bargaining agreement subject to the exclusive arbitral remedies contained in that Act . . . . It follows from this difference that a state claim is more likely to impinge on an area of exclusive administrative jurisdiction under the RLA than under the NLRA." (*Jackson* v. *Consolidated Rail Corp.* (7th Cir. 1983) 717 F.2d 1045, 1052; cf. also *Andrews* v. *Louisville & Nashville R. Co., supra,* 406 U.S. 320, 323 [32 L.Ed.2d 95, 98-99].) This distinction is historically explicable: The RLA provisions for mandatory administrative processing of minor disputes were part of a mechanism "designed to serve the stated purposes of the Act which were, among others: 'To avoid any interruption to commerce or to the operation of any carrier engaged therein' . . . ." (*Machinists* v. *Central Airlines* (1963) 372 U.S. 682, 687-689 [10 L.Ed.2d 67, 73, 83 S.Ct. 1533]; cf. also *Majors* v. *U.S. Air, Inc.* (D.Md. 1981) 525 F.Supp. 853, 855 ("[o]ne of the primary purposes of the Act is to minimize interruptions in the nation's transportation services by strikes and labor disputes").) No similar perceived need for swift determination of minor disputes has been associated with the NLRA or LMRA.

In sum defendants' RLA cases, in general, and *Beers* v. *Southern Pacific Transportation Co., supra,* 703 F.2d 425 are not dispositive in the circumstances of record here.

■ Nor do defendants make a persuasive case for preemption under the leading judicial decisions in the NLRA/LMRA context. Most such decisions involve attempts in state courts to assert claims based upon alleged conduct which would constitute a violation of NLRA section 7 or an unfair labor practice under NLRA section 8. The basic principles were spelled out in *San Diego Unions* v. *Garmon, supra,* 359 U.S. 236: "[C]ongress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience . . . . ■ [¶] When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. [Fn. omitted.] However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. [Citation.] Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act. [Fn. omitted.] ■ [¶] When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 . . ., or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . . [¶] . . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (359 U.S. at pp. 242-245 [3 L.Ed.2d at pp. 781-783].)

The limits of *Garmon*'s preemption rule were further explored in *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056]. Farmer's decedent, Hill, had been an officer of the carpenters' union local. He sued the union on various theories including intentional infliction of emotional distress. The California superior court permitted the emotional distress count to go to the jury, which awarded actual and punitive damages. A Court of Appeal reversed on the ground of preemption, holding "that the state courts had no jurisdiction over the complaint since the 'crux' of the action concerned employment relations and involved conduct arguably subject to the jurisdiction of the National Labor Relations Board." (430 U.S. at p. 295 [51 L.Ed.2d at p. 346].) The California Supreme Court denied

hearing, but the United States Supreme Court granted certiorari, vacated the judgment, and remanded, concluding in relevant part that Hill's claim was not preempted. The United States Supreme Court reiterated *Garmon*'s qualifications to the preemption rule for matters of "merely peripheral concern" and matters sufficiently "deeply rooted in local feeling" and added that "[w]e also have refused to apply the pre-emption doctrine 'where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes.' [Citations.]" (430 U.S. at pp. 296-297 [51 L.Ed.2d at pp. 347-348].)

Applying these principles to Hill's claim, the United States Supreme Court noted that "there is no federal protection for conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it,'" and that California, "on the other hand, has a substantial interest in protecting its citizens from the kind of abuse of which Hill complained. That interest is no less worthy of recognition because it concerns protection from emotional distress caused by outrageous conduct, rather than protection from physical injury . . . ." (430 U.S. at p. 302 [51 L.Ed.2d at pp. 351-352].) "Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress. [Citations.] The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities [in violation of NLRA § 8(b)]." (430 U.S. at p. 304 [51 L.Ed.2d at p. 353].) The United States Supreme Court then qualified its position: "Union discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle. . . . Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." (430 U.S. at p. 305 [51 L.Ed.2d at p. 353].)

■ These principles appear to be applicable to Nahm's claim against defendants. The question whether Nahm's damage claims, asserted after her employment has terminated for reasons apparently unrelated to the claims, should be arbitrated under the collective bargaining agreement can fairly be characterized as of peripheral concern to the LMRA. No protected activity or unfair labor practice is implicated. Because Nahm's employment has terminated the value to her of remedies available through the arbitration process is problematic at best; to force arbitration in this case could advance

the policy goals of federal labor law in only the most abstract sense. At the same time, Nahm appears to have pleaded an orthodox case for recovery under California law for the tort of intentional infliction of emotional distress which is, as the United States Supreme Court recognized in *Farmer,* a matter of legitimate local concern. (Cf., e.g., *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [88 Cal.Rptr. 88, 468 P.2d 216].)

We conclude that the preemption doctrine as stated in *Garmon* and qualified in *Farmer* does not bar state-court action under the circumstances of the record before us.

■ The remaining question is whether Nahm was required to exhaust remedies under the grievance-arbitration provisions of the collective bargaining agreement before she could bring her action in superior court.

■ "It is well established that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust the internal remedies before resorting to the courts in the absence of facts excusing such exhaustion. [Citations.] [¶] . . . '[T]his rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts [citation], is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. [Citation.] The use of these internal remedies for the adjustment of grievances is designed not only to promote settlement thereof but also to foster more harmonious employee-employer relations. [Citation.] Such procedures, which have been worked out and adopted by the parties themselves, must be pursued to their conclusion before judicial action may be instituted unless circumstances exist which would excuse the failure to follow through with the contract remedies.'" (*Johnson* v. *Hydraulic Research & Mfg. Co., supra,* 70 Cal.App.3d 675, 679-680.) This California rule is consistent with the strong federal policy in favor of arbitration of labor disputes under existing collective bargaining agreements. (Cf., e.g., *Steelworkers* v. *American Mfg. Co., supra,* 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407]; *Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. 574, 581 [4 L.Ed.2d 1409, 1416 1417]; *Republic Steel* v. *Maddox* (1965) 379 U.S. 650, 652-653 [13 L.Ed.2d 580, 582-583, 85 S.Ct. 614].)

■ Defendants contend that every one of Nahm's allegations "arguably constitutes a breach of the collective bargaining agreement" and therefore that respondent court "will be forced to interpret the collective bargaining

agreement . . . . Thus, the allegations contained in the complaint are inextricably intertwined with the collective bargaining agreement." "Nahm has chosen to disguise her dissatisfaction with the collective bargaining agreement as an action for intentional infliction of emotional distress. In truth, her complaint is an all-out assault on the collective bargaining process and arbitration of employment disputes."

If valid these contentions would tend to satisfy the exhaustion doctrine's requirement that the dispute be within the scope of the contract. But the contentions impermissibly distort Nahm's complaint which, in our view, plainly alleges a course of conduct intentionally undertaken for the purpose of inflicting emotional distress upon Nahm. Undeniably the collective bargaining agreement will be implicated, but only as it may have been used or disregarded in the course of the alleged "episodes and encounters designed to harass, humiliate and upset plaintiff." This is not a situation in which (as in cases on which defendants rely) a plaintiff has by "artful pleading" undertaken to disguise an alleged wrongful discharge or other direct violation of a collective bargaining agreement in tort rhetoric. This is a legitimate tort complaint. In terms of the policies underlying the exhaustion doctrine, it is too late in this case to hope for a simple, expeditious and yet adequate disposition of Nahm's complaints or "to foster more harmonious employee-employer relations." Nahm is no longer an employee, and the relief which might have been available to her, as an employee, by way of the arbitration procedure—correction of allegedly improper entries in her personnel file, for example—would be all but meaningless, to her or to the labor-management relationship at Alpha Beta now.

We conclude that the elements of the exhaustion doctrine have not been demonstrated and that, in any event, the doctrine is inappropriate to the circumstances of record.

The alternative writ of mandate is discharged. The petition for a peremptory writ of mandate is denied.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied November 14, 1984, and petitioners' application for a hearing by the Supreme Court was denied December 20, 1984.