**Michael TRUEX and Fred Trujillo,
Plaintiffs-Appellants,**

v.

**GARRETT FREIGHTLINES, INC., Ray King, George Lyles, Jr., Keith Tribby, and Corporate and Individual Does 1 through 200, inclusive, Defendants-Appellees.**

No. 84–6468.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1985.

Decided Nov. 12, 1985.

Designated for Publication
March 14, 1986.

Michael D. Hanson, Law Offices of Hanson & Adams, San Bernardino, Cal., for plaintiffs-appellants.

Steven M. Schneider, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, ALARCON and POOLE, Circuit Judges.

ALARCON, Circuit Judge:

Appellants Michael Truex and Fred Trujillo (hereinafter appellants) appeal from the district court's summary judgment in favor of appellees Garrett Freightlines, Inc., Ray King, George Lyles, Jr., and Keith Tribby (hereinafter referred to collectively as Garrett). Appellants contend that the district court erred in ruling that (1) their state tort claims for intentional infliction of emotional distress were preempted by federal labor law, and (2) their failure to exhaust the grievance procedures available under their collective bargaining agreements barred their section 301 claims for breach of the collective bargaining agreements.

In reviewing a grant of summary judgment, this court must determine whether, after viewing the evidence in the light most favorable to the opposing party, any genuine issue of material fact remains for trial and whether the substantive law was correctly applied. Fed.R.Civ.P. 56(c); *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976, 981 (9th Cir.1985). The district court's summary judgment award is reviewable *de novo. Friends of Endangered Species,* 760 F.2d at 981.

## I. FACTS AND PROCEDURAL BACKGROUND

Appellant Truex is a member of Teamsters Union Local No. 495. Appellant Trujillo is a member of Teamsters Union Local No. 63. Although Truex and Trujillo are covered by different collective bargaining agreements between their respective unions and their employer, Garrett, the provisions of the collective bargaining agreements relevant to this appeal are identical.

Article 45 of the collective bargaining agreements sets forth a grievance procedure which provides a method for resolution of "any controversy" between the union and the employer. Article 46 provides that the employer must have just cause to discharge or suspend any employee and must have given the employee at least one warning notice describing the employer's complaint. Pursuant to article 46, warning notices are automatically deemed protested by the employee, but grievances based on them will not be heard unless the notices are used as a basis for suspension or discharge within their effective life (nine months).

Truex received seven warning notices between January 1983 and February 1984. Trujillo received eight warning notices between August 1983 and February 1984. The notices chastised both men for wasting company time and for excessive absenteeism. Trujillo also received notices for failing to follow instructions and for using abusive language toward supervisors. Three of the warning notices received by Truex furnished the basis for his suspension in 1984. Truex grieved these notices and the arbitrator ruled in his favor, awarding him back pay and ordering him reinstated.

Appellants filed a single complaint in Los Angeles County Superior Court against Garrett and their supervisors at Garrett (Ray King (assistant terminal manager), George Lyle, Jr. (dock supervisor), and Keith Tribby (operations manager)), alleging harassment, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent employment. Appellants allege that the warning notices were issued without foundation, and that their inability to grieve the letters under the terms of their collective bargaining agreements caused them to suffer emotional distress. Appellants also allege that they suffered harassment at the hands of their supervisors at Garrett, which took the form of following them for several hours during each work shift (including break times, meals, and restroom visits), confronting them and using abusive language toward them, bribing other employees to "set them up for termination," reassigning work for no legitimate reason, and in the case of Trujillo, forcing him to push heavy dollies when mechanized models were available.

Garrett filed a petition for removal with the district court on the basis that the state claims were artfully pled federal claims for breach of the collective bargaining agreements, and were preempted by Labor Management Relations Act (LMRA) § 301, 29 U.S.C. § 185(a) (1982). Garrett then moved for summary judgment on the grounds that (1) appellants' state claims were preempted by federal labor law, and (2) appellants' failure to exhaust the grievance procedures available to them under their collective bargaining agreements barred their section 301 actions. Appellants filed a cross-motion for remand. The district court denied appellants' motion for remand and granted Garrett's summary judgment motion.

## II. PREEMPTION

Appellants' complaint purports to allege the following state law claims: (1) harassment; (2) breach of implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; and (4) negligent employment. On appeal, appellants concede that removal was proper because their claim for breach of the implied covenant of good faith and fair dealing "is in part a contract theory implicating the collective-bargaining agreement." Appellants' Opening Brief at 1; *see Olguin v. Inspiration Consolidated Copper Co.*, 740

F.2d 1468, 1473 (9th Cir.1984) (court may look to facts outside of the complaint to determine whether an "artfully pleaded" state claim is in reality a section 301 claim for breach of the collective bargaining agreement). Each of appellants' remaining claims also attacks the propriety of conduct which is regulated by the collective bargaining agreements.

## A. HARASSMENT AND EMOTIONAL DISTRESS CLAIMS

Appellants' harassment and emotional distress claims are based upon the following allegations: (1) Garrett issued unjustified warning letters criticizing appellants' conduct during working hours; (2) appellants' supervisors engaged in excessive surveillance of appellants during working hours for the purpose of harassing them; (3) appellants' supervisors used abusive language toward them; (4) appellants' supervisors attempted to bribe other employees to "set up" appellants for termination; and (5) appellants' work duties were reassigned for no legitimate purpose.

■ Appellants' claims that Garrett issued them unjustified warning letters, conducted excessive supervision of them, and altered their work assignments are in essence claims that administration of discipline was improper under the standards set by the collective bargaining agreements. *See Choate v. Louisville & Nashville R.R.*, 715 F.2d 369, 371–72 (7th Cir.1983) (employee's characterization in emotional distress claim of employer's threats of dismissal, punishment, and attempts to discipline employee as "improper" implies existence of contractual standards in collective bargaining agreement). Because an evaluation of these claims is substantially dependent upon an analysis of the terms of the collective bargaining agreements, the claims are preempted by federal labor law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. ——, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985); *see Beers v. Southern Pacific Transportation Co.*, 703 F.2d 425, 429 (9th Cir.1983) (preemption proper where employee's complaint concerned working conditions and disciplinary procedures which are rights covered by or substantially related to the collective bargaining agreement).

Moreover, because the collective bargaining agreements expressly specify a just cause standard for termination, appellants' claim that Garrett is attempting to terminate them is of necessity a claim that Garrett is engineering a breach of the collective bargaining agreements by preparing to terminate appellants without just cause. Because disputes concerning the employment relationship are governed by the collective bargaining agreement, they are preempted by federal labor law. *See Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d at 1476 (emotional distress claim concerning employment or work conditions held preempted by federal labor law); *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.) (emotional distress claim preempted because it was based on a matrix of facts which were inextricably intertwined with the grievance machinery of the collective bargaining agreement), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

Therefore, the district court properly dismissed appellants' harassment and mental distress claims as preempted by federal labor law. *See Allis-Chalmers v. Lueck*, 105 S.Ct. at 1916 (where evaluation of state tort claim is substantially dependent upon analysis of terms of collective bargaining agreement, a claim must either be treated as a section 301 claim or dismissed as preempted by federal labor law).

■ Appellants contend that their emotional distress claims fit within the exception to federal preemption carved out by the Supreme Court in *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer*, a union member brought a claim for intentional infliction of emotional distress against his union and its officials, alleging a campaign of personal abuse and harassment which included frequent public ridicule, incessant verbal abuse, and discrimination in hiring referrals. *Id.* at 292–93, 97

S.Ct. at 1059. The Court held that the emotional distress claim was not preempted, reasoning that no provision of the National Labor Relations Act (NLRA) protected against the conduct complained of by the employee, which was so outrageous that "no reasonable man in a civilized society should be expected to endure it." *Id.* at 302, 97 S.Ct. at 1064. The Court opined that California's substantial interest in protecting its citizens from the kind of abuse of which the employee in *Farmer* complained outweighed any potential for interference with the federal scheme of regulation. *Id.* at 302-04, 97 S.Ct. at 1064-65.

The Court established a two-pronged alternative standard for permitting concurrent state court jurisdiction over a tort action: "Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.* at 305, 97 S.Ct. at 1066 (footnote omitted).

Appellants' emotional distress claims are based upon two independent categories of allegations: (1) allegations that the warning letters issued to them are lacking in foundation and that their inability to grieve those letters prior to suspension or termination caused them to suffer emotional distress, and (2) allegations that their supervisors at Garrett harassed them through a course of conduct which included reassignment of work duties, use of abusive language, and excessive surveillance. To the extent that appellants assert that either category of allegations fits within the first prong of the *Farmer* exception to preemption, their argument is meritless. The Supreme Court's characterization of the first prong in the *Farmer* test—that the tort be "unrelated to employment discrimination" —is equivalent to a requirement that the facts not be "inextricably intertwined" with a labor law duty established by the collective bargaining agreement. *Bloom v. International Brotherhood of Teamsters, Local 468,* 752 F.2d 1312, 1314 (9th Cir. 1984). Because evaluation of appellants' emotional distress claims would require a determination whether the warning letters given to appellants differed from those given to other employees, and whether the surveillance of appellants and assignment of their work duties were unusual in comparison to the supervision of other employees, the claims are inextricably intertwined with a construction of the collective bargaining agreements.

Appellants' primary contention on appeal is that the campaign of harassment is sufficiently outrageous that it satisfies the requirements of the second prong of the *Farmer* exception because even if regulated by the collective bargaining agreements, supervision of appellants was conducted in a "particularly abusive manner."[1] 430 U.S. at 305, 97 S.Ct. at 1066. Appellants' argument does not advance their cause in light of this court's narrow construction of the "substantially abusive manner" exception established in *Farmer.* In *Bloom v. International Brotherhood of Teamsters,* we held that breach of a union's promise made in connection with the settlement of a labor dispute to secure a preferential hiring agreement with another bargaining unit on behalf of disputing members did not rise to the level of outrageous conduct required to avoid preemption under *Farmer.* 752 F.2d at 1315. We contrasted the mere breaking of a promise at issue in that case with the outrageous conduct alleged in *Richardson v. Communications Workers of America,* 443 F.2d 974 (8th Cir.1971). *Bloom,* 752 F.2d at 1315. In *Richardson,* the employee faced "1000 '[v]ile and derogatory' signs, constant 'chanting, jeering, and gesturing,' a daily 'rain of nuts, bolts, and screws thrown at him,' intentional cigarette burns, vandalism of his car and locker, and vulgarities about his wife." *Bloom,* 752 F.2d at 1315 (quoting *Richardson,* 443 F.2d at 983 n. 12); *see also Magnuson v. Bur-*

---

1. Appellants do not contend that the warning letters were issued in a particularly abusive manner, and the record contains no evidence that the warning letters were issued or written in any unusual or abusive manner.

*lington Northern, Inc.,* 576 F.2d at 1369 (holding that complaint for emotional distress will not fit within "the narrow exception to federal preemption explained in [*Farmer*]").

The harassment of which appellants complain in the instant case falls far short of the truly outrageous conduct identified in *Richardson.* Garrett's supervision of appellants was not accomplished in such an abusive manner that it falls outside of the conduct regulated by the collective bargaining agreements. Garrett's close supervision of appellants appears reasonable in light of Garrett's dissatisfaction with appellants' work performance (as evidenced by the issuance of warning letters). Appellants' declarations filed in opposition to Garrett's motion for summary judgment do not set forth any facts which would support a finding of outrageous conduct; these declarations merely recite appellants' subjective conclusions that they were being harassed.

Appellants also argue that the facts alleged in the instant case satisfy the requirement of "outrageousness" required to state a claim for intentional infliction of emotional distress in the context of an employer/employee relationship under *California law.* Appellants' discussion of the California case law misses the mark. Although the Supreme Court in *Farmer* relied in part on the fact that California law requires outrageous conduct in order to ground liability on a state claim for emotional distress, *see Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066, it did not adopt the definition of "outrageous" conduct developed by California courts. Nor has this court looked to California case law in its case-by-case development of preemption law. *See, e.g., Bloom,* 752 F.2d at 1315 (extreme conduct required to satisfy the minimum level of outrageousness necessary to avoid preemption). Therefore, the conduct in the instant case does not fall within the *Farmer* exception to federal preemption.

## B. NEGLIGENT EMPLOYMENT CLAIM

■ Appellants' claim for negligent employment fares no better under a preemption analysis. Appellants alleged that Garrett *negligently* employed appellees King, Lyle, and Tribby, and failed to discipline them for their improper administration of the disciplinary provisions of the collective bargaining agreement. Because resolution of this claim is also dependent upon an interpretation of disciplinary standards contained in the collective bargaining agreements, it was properly dismissed as preempted. Indeed, appellants admit that the gravamen of their complaint is a claim for intentional infliction of emotional distress: "[E]ach and every cause of action, or count, of the Complaint ... is essentially an action for intentionally [sic] infliction of emotional distress." Appellants' Opening Brief at 13.

The district court did not err in finding that appellants' claims for harassment, intentional infliction of emotional distress, and negligent employment were preempted by section 301 of the Labor Management Relations Act.

## III. EXHAUSTION OF GRIEVANCE PROCEDURES

Appellants contend that the district court erred in ruling that their section 301 claims are barred by their failure to exhaust the grievance procedures available under their collective bargaining agreements. We disagree.

Appellants first assert that the district court erred in finding that there were no genuine issues of material fact regarding their failure to exhaust the grievance procedure available under their collective bargaining agreements. Appellants do not point to any disputed issues of fact other than those which they listed in their "statement of genuine issues of material fact," filed in support of their opposition to Garrett's motion for summary judgment: that the warning letters were unwarranted, and that surveillance actually occurred. For the purposes of its motion for summary

judgment, however, Garrett did not dispute either of these facts. Instead, Garrett argues that the questions whether the warning letters were warranted and whether the surveillance occurred should be resolved by an arbitrator rather than by this court.

As discussed *supra,* appellants have artfully pled violations of their collective bargaining agreements. A bargaining unit employee may not bring an action for breach of a collective bargaining agreement unless he has exhausted the contractual grievance procedures. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d at 1476; *Buscemi v. McDonnell Douglas Corp.,* 736 F.2d 1348, 1350 (9th Cir.1984). This rule prevents employees from sidestepping available grievance procedures when a dispute involves an interpretation of the collective bargaining agreement, and insures that where the parties to a collective bargaining agreement have agreed that a neutral arbitrator will be responsible in the first instance for interpreting the collective bargaining agreement, the arbitration provisions do not lose their effectiveness. *Allis-Chalmers,* 105 S.Ct. at 1915–16.

■ It is undisputed that appellants did not file grievances concerning the warning notices. Appellants contend instead that their claims fall outside of the collective bargaining agreements because the collective bargaining agreements themselves bar them from obtaining a hearing on a grievance based upon the receipt of warning notices unless the notices are used as a basis for suspension or discharge within their effective life (nine months). In essence, appellants are protesting the fact that the collective bargaining agreements, negotiated on their behalf by a duly elected union, afford them no remedy for the issuance of warning letters which have not served as the basis for further disciplinary action. Appellants may not raise that question here; they are bound by the contractual restrictions as to when grievances

may be raised. *See Hollins v. Kaiser Foundation Hospitals,* 727 F.2d 823, 825 (9th Cir.1984) (probationary employee held bound by collective bargaining agreement's restriction on available grievance procedures for employees terminated within 90 days of employment; as exclusive bargaining representative, union may waive rights of employees).

■ Appellants' argument that the remedies available to them through arbitration (reinstatement and back pay) would not compensate them for their emotional distress is equally meritless. This court rejected the same argument in *Beers v. Southern Pacific Transportation Co.,* stating: "the critical inquiry is whether the controversy (the harassments) was identical to or different from what could have been, but was not, presented to the NRAB [National Railroad Adjustment Board]." 703 F.2d at 429. As discussed *supra* in section I, appellants' claims are based on their collective bargaining agreements; therefore, appellants are limited to the remedies available under the collective bargaining agreements.

Appellants argue that our decision in *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984), *cert. denied,* ── U.S. ──, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985) implies that it is unnecessary to seek a remedy through arbitration where the claim is outside the collective bargaining agreement. Appellants' argument begs the question. In *Garibaldi,* we held that an adverse arbitration decision did not operate to bar Garibaldi's wrongful termination claim. 726 F.2d at 1376. We had already concluded, however, that Garibaldi's wrongful termination claim fell outside the scope of the collective bargaining agreement and was not preempted because it was based on a violation of state public policy. 726 F.2d at 1374–75, 1376.

Appellants' reliance upon *Peabody Galion v. Dollar,* 666 F.2d 1309 (10th Cir.1981) is similarly misplaced. Dollar's state claim for wrongful termination was based upon violation of a state law forbidding retaliatory firing of an employee who filed a

workers' compensation claim. *Id.* at 1312. The court analyzed the relationship between Dollar's statutory claim and the NLRA, and concluded that the discharge of workers because they filed workers' compensation claims is not protected or prohibited by the NLRA and is unrelated to the collective bargaining agreement. *Id.* at 1316. The court concluded that the claim was not preempted, and that the binding arbitration provision in the collective bargaining agreement did not bar the claim because the dispute was unrelated to the collective bargaining agreement and was not subject to arbitration. *Id.* at 1319–20.[2]

In the instant case, by contrast, we have concluded that appellants' state tort claims *are* preempted by federal labor law. Therefore, appellants' failure to exhaust their remedies under the collective bargaining agreements precludes them from pursuing their section 301 claims in federal court.

## IV. CONCLUSION

The district court correctly concluded that appellants' state tort claims were preempted by federal labor law or were subsumed within their section 301 claims. Because appellants failed to exhaust the grievance procedures available to them under their collective bargaining agreements, the district court did not err in dismissing their section 301 claims.

The judgment is AFFIRMED.

---

**2.** Appellants also rely upon a California decision, *Alpha Beta, Inc. v. Superior Court (Nahm),* 160 Cal.App.3d 1049, 207 Cal.Rptr. 117 (1984) in support of their argument that their claims are not barred for failure to exhaust grievance procedures. *Alpha Beta* held that the exhaustion doctrine did not apply to claims against an employer for intentional acts designed to harass the employee. *Id.* at 1059; 207 Cal.Rptr. at 123.

Garrett correctly argues that *Alpha Beta* does not survive the Supreme Court's decision in *Allis-Chalmers;* subsequent to the filing of the briefs in this case, the Supreme Court vacated the *Alpha Beta* decision and remanded that case in light of its decision in *Allis-Chalmers. Alpha Beta Co. v. Superior Court,* —— U.S. ——, 105 S.Ct. 2696, 86 L.Ed.2d 713 (1985).