[Crim. No. 24218. Second Dist., Div. Four. July 31, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ARTHUR BENJAMIN et al., Defendants and Appellants.

## COUNSEL

Harold S. Vites, Richard H. Levin and Ray G. Clark, under appointments by the Court of Appeal, Frederick M. Zax and Alan H. Russell for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Bradley A. Stoutt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—In case No. A183482 an information in two counts charged all defendants with (count I) burglary, a felony occurring January 15, 1973, in violation of Penal Code section 459, it being also alleged that, in committing the crime, defendants were armed with and used pistols

and, when arrested, they were armed with concealed deadly weapons, to wit, pistols. Count II, against defendant Benjamin, alone, charged him with violation of The Dangerous Weapons' Control Law, a felony occurring January 15, 1973, in violation of Penal Code section 12021, in that said defendant had sustained earlier convictions of felonies (burglaries—Pen. Code, § 459, and receiving stolen property—Pen. Code, § 496) and possessed a concealable pistol, having a barrel length less than 12 inches long. Three prior felonies were alleged against defendant Funkhouser, four were alleged against defendant Benjamin and two were alleged against defendant Richter.

In case No. A279237, defendant Benjamin had been charged in two counts with (count I) grand theft, a felony occurring October 4, 1971, in violation of Penal Code section 487, and (count II) attempted grand theft, a felony occurring October 7, 1971, in violation of Penal Code sections 664 and 487. Count II of the information apparently had been dismissed and Benjamin had pled guilty to count I, i.e.: violating Penal Code section 487, subd. 1; proceedings had been suspended and Benjamin placed on probation for five years under various conditions, one being that he obey all laws.

In case No. A183482, all defendants pled "not guilty." Funkhouser admitted the three priors; Richter admitted a prior burglary conviction in Minnesota and a prior conviction of manslaughter in California. Defendant Benjamin admitted two prior felony convictions for burglary and one for grand theft; an alleged conviction for forgery was striken on the People's motion. Later on, one of Benjamin's alleged convictions of burglary was striken on the People's motion. A hearing was held pursuant to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and the court concluded that Richter's conviction of manslaughter could not be used by the prosecution for impeachment purposes, the court later declaring that neither of his convictions could be used to impeach him.

A jury trial ensued. All four defendants were found guilty of burglary as charged in count I, which the jury fixed as being in the first degree; Benjamin was found guilty of count II, also. The jury further found that: Funkhouser was neither armed with, nor did he use, a firearm in the commission of the crime nor was he armed with a concealable weapon at the time of his arrest; Benjamin was armed with and used a firearm in committing count I; Antonson did not use a firearm in committing count I but was armed with a concealable deadly weapon when arrested; Richter

was not armed with, nor did he use, a firearm in committing the crime nor was he armed with a concealable deadly weapon at the time of his arrest. The allegations that Antonson was armed when committing the burglary and that Benjamin was armed at the time of his arrest, were stricken by the court because the jury returned no verdict as to them.

Funkhouser, Antonson and Richter[1] were sentenced to state prison. Benjamin's probation was revoked in case No. A279237, and he was sentenced to state prison for the term prescribed by law. He was sentenced to consecutive prison terms on counts I and II in case No. A183482, the sentence in case No. A279237 to run consecutively to the sentence on count I (No. A183482) and concurrently with the sentence on count II (No. 183482).

Funkhouser's probation was revoked in case No. A180754 and he was sentenced to state prison, the sentence to run concurrently with the sentence in the present case, i.e.: No. A183482.

All defendants appeal from the judgments; Benjamin and Funkhouser additionally appeal from the orders revoking probation in cases Nos. A279237 and A180754, respectively. Since these latter appeals are determined by their appeals in the first case, we discuss their appeals in that case, only.

### All Defendants

■ All defendants contend the trial court erred by refusing to read to the jury CALJIC instructions Nos. 851 (rev.) and 852 (rev.). These instructions (since replaced by CALJIC Nos. 4.60 and 4.61) embody the theory that the defense of "entrapment" may rest upon inducements made by some person unconnected with government law enforcement.[2]

---

[1]The transcripts indicated Richter was on probation in case No. A169124. The court found his present conviction violated that probation and, accordingly, imposed sentence in No. A169124 to run concurrently with the sentence in No. A183482, i.e.: the present case. However, as no appeal was taken in case No. A169124, we have no jurisdiction to discuss it further herein.

[2]CALJIC instruction No. 851 (rev.) reads: "The law does not tolerate one person, particularly a law enforcement officer, generating in the mind of another person who is innocent of any criminal purpose, the original intent to commit a crime thus inducing such person to commit a crime which he would not have committed or even contemplated but for such inducement. ¶ If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by another person for the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed."
CALJIC instruction No. 852 (rev.) is not pertinent to our discussion.

Our examination of the record discloses that, if the principle of law stated is correct, there was evidence to support it in the testimony of defendant Benjamin who, in his own defense, testified that prosecution witness Barbara Ward, employed at a Universal Money Order Company store, induced him (and, through him, the other defendants) to rob her employer's store of approximately $10,500.

Contrary to this, there was evidence that Barbara Ward told the police on January 11, 1973, that two of the defendants (Funkhouser and Richter) early that morning had sought her cooperation in robbing her employer. There was no evidence that she was a paid police informer or acted other than as a citizen; similarly, there was no evidence that she was or became a police agent.[3] The only instruction Barbara Ward received from the police was their request that she notify them in the event any defendant again contacted her.

The defense of "entrapment" ordinarily would not violate fundamental principles of due process involving the United States Constitution. (*United States* v. *Russell* (1973) 411 U.S. 423, 430-431 [36 L.Ed.2d 366, 372-373, 93 S.Ct. 1637].) We see no such involvement here and, accordingly, look to the law of entrapment as it exists in California. (*People* v. *Benford* (1959) 53 Cal.2d 1 [345 P.2d 928].)

*People* v. *Moran* (1970) 1 Cal.3d 755, 761 [83 Cal.Rptr. 411, 463 P.2d 763] contained dictum indicating approval of a doctrine that would authorize the defense of entrapment to become a jury question, even though the person entrapping the defendant was not a law enforcement officer and had no connection as agent with such agency. The validity of this dictum was attacked in *People* v. *Gregg* (1970) 5 Cal.App.3d 502 [85 Cal.Rptr. 273], wherein it was additionally pointed out that, as dictum, the statement in *Moran, supra,* need not be followed. We adhere to the reasoning of *Gregg, supra.* Inasmuch as the *Gregg* opinion is so sufficiently discursive as to require no further expansion by us, we refrain from added discussion, although we do point to *People* v. *Benford, supra,* 53 Cal.2d at pp. 8-10 (cited in the *Moran* dissent) as giving the reason for the California rule. Thus, in *Benford,* it was stated (at p. 9): ". . . the court refuses to enable

---

[3]We distinguish our case from *Sherman* v. *United States* (1958) 356 U.S. 369 [2 L.Ed.2d 848, 78 S.Ct. 819], relied on by defendants. In that case the court stated (pp. 373-374 of U.S. and p. 852 of L.Ed.2d) as to the informer: "Although he was not being paid, Kalchinian was an active government informer who had but recently been the instigator of at least two other prosecutions.[2]"

In footnote 2, it was pointed out that Kalchinian testified: " 'Q. . . . it was your *job while working with these agents to go out and try and induce a person to sell* narcotics to you . . .? A. I would say yes to that.' "

officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime." (Also see: *Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356, 363, 368 [107 Cal.Rptr. 473, 508 P.2d 1121]; *People* v. *Perez* (1965) 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934]; *People* v. *Roberts* (1953) 40 Cal.2d 483, 489 [254 P.2d 501]; 1 Witkin, Cal. Crimes (1963) § 175, pp. 167-168, and (1973 Supp.) § 175.)

We conclude the instructions tendered by the defendants were properly refused, as being an incorrect statement of California law.

### *Defendant Funkhouser*

Besides raising the point already discussed, this defendant makes other contentions:

### *Restriction On Examination Of Defense Witnesses Taylor And Modlies*

On cross-examination by counsel for defendant Richter, prosecution witness Ward testified she had not attended a party on December 10-12, 1972, held on 106th Street in Inglewood, and did not meet there, or know, nor had she ever before seen, Ivory "Eddie" Modlies or Jerry Taylor, except she had seen them during this trial in the corridor outside the courtroom. She was asked about purported conversations at the party with these two men but denied any. After the prosecution rested, defendants called Taylor and Modlies as witnesses. They testified they had attended a party on December 9 or 10, 1972, at 106th Street in Inglewood and there had met Barbara Ward. When asked by defense counsel regarding conversations allegedly had with her, the prosecution objected on the ground the questions called for hearsay and the objection was sustained. Thereafter, all defendants offered to prove that, if permitted to testify, the witnesses would state Barbara Ward had proposed to them that they assist her in staging a "fake," or feigned, robbery of her employer's store. The trial court declined to permit the questions, pointing out that Barbara Ward's conduct in December 1972 did not make her a police agent in January 1973, so that her conduct in 1972 would not be relevant to the present case. Efforts made by defendants to reopen the matter were unavailing, the prosecution objecting that defendants were improperly attempting to impeach Barbara Ward on collateral matters. We agree with the trial court.

The fact, assuming it to be a fact, that Barbara Ward attempted in December 1972 to procure a feigned robbery of her employer's store would

not, under the evidence here, make her a police agent in January 1973. Defendants' arguments that such conduct in 1972 would tend to show a "propensity" (Evid. Code, § 1101) to entrap persons into staging "fake" robberies is unavailing to establish that the evidence is relevant. (Evid. Code, § 210.)

Similarly, the right to cross-examine Ward does not mandatorily make admissible every effort to impeach her. The trial court was endowed with the discretion given it by Evidence Code section 352 and it did not improperly reject defendants' efforts to impeach Barbara Ward on matter collateral to the issues. (*People* v. *Lavergne* (1971) 4 Cal.3d 735, 742-743 [94 Cal.Rptr. 405, 484 P.2d 77]; *People* v. *Moses* (1972) 24 Cal.App.3d 384, 394-399 [100 Cal.Rptr. 907]; *People* v. *Goodspeed* (1972) 22 Cal. App.3d 690, 695-696 [99 Cal.Rptr. 696]; Witkin, Cal. Evidence (2d ed. 1966) §§ 1259 et seq., pp. 1162 et seq., and (1972 Supp.) §§ 1259 et seq.)

Defendants' cross-examination of Barbara Ward on this point quite obviously was for the sole purpose of attempting later to impeach her by the contradictory testimony of Taylor and Modlies. But, as stated in *People* v. *Lavergne, supra,* 4 Cal.3d at p. 744: "A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted. [Citations.]"

### The Use Of Prior Convictions For Impeachment Purposes

■ The information alleged than Funkhouser had sustained prior convictions for violation of Health and Safety Code sections 11500, 11714 and 11912. Funkhouser admitted the prior(s) and moved, under *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], that the court order them to be not usable to impeach him, if he testified. The motion was denied and he contends such ruling was error. Funkhouser did testify and he was impeached by the prosecution.

Defendant argues that his convictions under Health and Safety Code sections 11500 and 11714 occurred in 1956 and, therefore, were too remote to be used. We note, however, that his conviction under Health and Safety Code section 11912 occurred in 1972 so that it may not be said the 1956 convictions were "followed by a legally blameless life" (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453), for which reason "remoteness" does not necessarily attach to the earlier convictions. Also to be observed is the fact that Funkhouser did testify and the trial court's ruling on the propriety of impeaching him did not deter him from testifying "out of fear of being preju-

diced because of impeachment by prior convictions." *(People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) Furthermore, on direct examination by his own counsel, Funkhouser had testified he was on probation for a prior narcotics violation,[4] thus voluntarily advising the jury of a narcotics conviction.

Under cross-examination by the prosecution, Funkhouser testified that his 1956 conviction of violating Health and Safety Code section 11500 (now § 11350) was for possession of marijuana; that his 1956 conviction of violating Health and Safety Code section 11714 (thereafter §§ 11502, 11502.1 and 11532, now §§ 11353, 11354 and 11361) was for furnishing marijuana to a minor; and that his September 1972 conviction for violating Health and Safety Code section 11912 (now § 11379) was for selling seconal (a dangerous drug). It may be that appellant misconstrues the holding in *People* v. *Beagle, supra,* 6 Cal.3d; that case appears to vest a trial court with *discretion* to exclude priors, since it notes that a trial court "may," but does not say it "must," exclude them. *(People* v. *Stewart* (1973) 34 Cal. App.3d 244, 247 [109 Cal.Rptr. 826].)

Be that as it may, we find no prejudice in the trial court's ruling, if error it was. We cannot say that, but for the erroneous admission of evidence, a different result was reasonably probable or that any miscarriage of justice resulted. (Cal. Const., art. VI, § 13; Evid. Code, § 353; *People* v. *Watson* (1956) 46 Cal.2d 818, 835-837 [299 P.2d 243].)

*The Trial Court Should Have Instructed The Jury, Sua Sponte,*
*That Barbara Ward Was An Accomplice*

 Penal Code section 1111 defines an accomplice as: ". . . one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Defendant Funkhouser contends that the testimony of his co-defendant, Benjamin, if believed, required that Barbara Ward be considered an accomplice as a matter of law or, if contradicted, raised a question of fact for the jury to resolve and that the trial court should have told the jury so, also instructing them that accomplice testimony is to be viewed with distrust. *(People* v. *Warren* (1940) 16 Cal.2d 103, 116-119 [104 P.2d 1024]; and see CALJIC instructions Nos. 3.10 et seq.)

---

[4]"Q. When you arrived back at Mr. Brendia's residence what did you next do? . . . A. . . . . I started feeling uneasy about circumstances that had developed there. Q. What made you feel uneasy? A. Well, for one thing, being on probation for narcotics, I noticed on the coffee table that there was marijuana and decided to leave."

Benjamin testified Barbara Ward telephoned to him between 8-10 a.m., Saturday morning, January 13, 1973. She asked him if he would be interested in "helping her pull a fake robbery on the Universal Money Order Company." He replied that he would be interested if it could be done without anyone's getting hurt. After more talk, she told him she would call him back. On Monday morning, January 15, 1973, at 7 a.m. she telephoned; he told her he was interested in her plan. They discussed further details and she suggested that he call Antonson, whom he did not know, because of her expressed belief that Antonson needed money and might have some guns they could use. Benjamin telephoned Antonson and they met in a bar. Barbara Ward also had suggested that he call Funkhouser, a stranger to him, and Richter, who Benjamin knew. Benjamin did get in touch with these men. Benjamin borrowed a gun and ammunition from a friend of his named McCracken. Richter knew Funkhouser. Thereafter that day, Richter drove Benjamin to Funkhouser's house. The "fake" holdup was arranged between Benjamin and Antonson and Benjamin telephoned to Barbara Ward, consulting with her as to the best time for it. Antonson and Benjamin were driven to the store by Richter in the get-away car, where he waited while they carried out the burglary.

On the basis of this evidence there is no doubt that, if believed, then, although Barbara Ward was not a legal cause of entrapping the men, she did aid and abet the crime and was an accomplice. Accordingly, the court should have instructed the jury on the law of accomplices. (*People* v. *Warren, supra*, 16 Cal.2d; *People* v. *Cisneros* (1973) 34 Cal.App.3d 399, 413-414 [110 Cal.Rptr. 269].)

We further conclude, however, that the court's failure to instruct was not prejudicial to defendants Benjamin and Antonson. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d at pp. 835-837.) Thus, there is no doubt the crime occurred. The police observed it occur and took, and the jury saw and heard, a video-tape of the event. Benjamin and Antonson were arrested at, or very near, the scene with money taken from the store.

Richter was arrested at the get-away car. Although there was evidence attaching Richter to the crime, Benjamin testified[5] that Richter merely drove him and Antonson to Inglewood to "see some people" and Richter was never told of the robbery plan. Benjamin further testified: "Q. . . .

---

[5]Benjamin was admittedly a good friend of Richter. Indeed, Benjamin testified Richter was a roommate. Benjamin further testified he lived at Veva Gipson's house, that Veva Gipson was the ex-wife of Richter and that Richter "half-way lived there," too.

Richter and Joe Funkhouser are just a couple of innocents who got caught up in it? A. To my knowledge, they are."

Similarly, although Funkhouser was not present at the burglary, evidence in addition to the testimony given by Barbara Ward attached him to the crime.

Since it cannot be said, however, that Ward's testimony concerning the participation of Funkhouser and Richter played no part in their convictions, it must be held that the court's failure to instruct on accomplices was prejudicial to both these defendants.

It is true that Funkhouser rested his case before Benjamin testified and Funkhouser did not seek to reopen his defense in order to adopt Benjamin's testimony as evidence. However, the prosecution had proceeded against all defendants on the theory they were involved in a conspiracy. (Evid. Code, § 1223; *People* v. *Washington* (1969) 71 Cal.2d 1170, 1174-1176 [81 Cal. Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541]; *People* v. *Morales* (1968) 263 Cal.App.2d 368, 373-374 [69 Cal.Rptr. 402].) *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913] does not operate to relieve the trial court of its duty to instruct as to accomplices, *sua sponte,* and we conclude that the court's failure so to instruct was prejudicial to Funkhouser.

Defendant Richter's brief advances the same contentions as did Funkhouser's and our conclusions respecting them are the same. We do note one procedural distinction, namely, that Richter, although he put on no evidence at all, did not rest his defense until after Benjamin had testified.

Benjamin raises no contention regarding his conviction of count II.

The judgments against defendants Benjamin and Antonson are affirmed in case No. A183482 but judgment is reversed as to defendants Funkhouser and Richter.

The order in case No. A279237, involving Benjamin's probation, is affirmed; however, the order in case No. A180754, involving Funkhouser's probation is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 13, 1974, and the petitions of appellant Benjamin and respondent for a hearing by the Supreme Court were denied October 2, 1974.