[No. D007922. Fourth Dist., Div. One. May 16, 1989.]

STEVE RYAN MOREAU, Plaintiff and Appellant, v.
SAN DIEGO TRANSIT CORPORATION et al., Defendants and
Respondents.

COUNSEL

Elizabeth A. Barranco for Plaintiff and Appellant.

Gray, Cary, Ames & Frye, J. Rod Betts and William B. Sailer for Defendants and Respondents.

OPINION

BENKE, J.—Steve Ryan Moreau filed suit against the San Diego Transit Corporation (Transit), claiming wrongful discharge and intentional and negligent infliction of emotional distress. Summary judgment was granted to Transit based on the trial court's finding that Moreau was employed under a collective bargaining agreement, his various state causes of action were preempted by section 301 of the Labor Management Relations Act (section 301) (29 U.S.C. § 141 et seq.), and that the time for pursuing grievance procedures under section 301 had passed.

Moreau argues the parties were bound by an earlier federal court determination his claims were not preempted and in any event, the trial court erred in finding his state tort claims preempted. He further argues that even assuming his general causes of actions were preempted, summary judgment should not have been granted because his termination was in violation of state public policy and thus could be advanced as an independent state court action.

I

FACTS AND PROCEDURAL BACKGROUND

In late 1984 and early 1985, Transit was concerned with drug-related thefts committed by its employees. With the assistance of the San Diego Narcotics Task Force, an informant was placed on Transit's night maintenance crew. Eventually several employees, including Moreau, sold drugs to the informant. After being criminally charged, but before trial, an exit interview was conducted at which Transit gave Moreau the option of resigning or being terminated. Moreau was told if he resigned, future employers would not be informed of the circumstances surrounding his resignation. Moreau resigned. Although a member of a union which had a collective bargaining agreement with Transit, Moreau did not challenge Transit's actions through union grievance procedures.

The criminal case proceeded to trial and, defending with a claim of entrapment, Moreau was acquitted. After acquittal Moreau sought reinstatement with Transit and compensation for lost wages. When Transit refused his requests, Moreau filed the present action.

As originally filed in San Diego Superior Court, Moreau's complaint alleged three causes of action for wrongful discharge, intentional infliction of emotional distress and negligent infliction of emotional distress. Transit removed the action to the federal district court on the basis Moreau's state causes of action were preempted by section 301. In federal court Transit moved for dismissal of the action, claiming Moreau did not exhaust his remedies under the collective bargaining agreement and urging the time to institute the union grievance procedure or to take other action under federal law had passed. Moreau moved for remand to state court on the ground the state action was not preempted by federal law. The federal district court concluded the action should be remanded and in light of this found moot Transit's motion to dismiss.

Finding itself once again in state court, Transit moved for summary judgment, again claiming federal preemption and noting Moreau's failure to seek relief through union grievance procedures or to take timely action under federal law. Moreau responded the federal court had determined the action was not preempted and its determination was binding on the parties. Moreau also argued the conduct of Transit in entrapping him was outrageous and thus even if his causes of action were preempted, the action could still be brought in state court under a public policy exception to preemption.

The motion for summary judgment was granted. The trial court concluded that because Moreau was employed pursuant to a collective bargaining agreement, his sole recourse for resolving disputes concerning termination of employment was through union grievance procedures unless Moreau could state a valid claim for wrongful discharge in violation of state public policy. The court found Moreau failed to pursue grievance procedures under the collective bargaining agreement and the time to take action under federal law had passed. The trial court also determined Moreau failed to present a valid claim under a public policy exception to federal preemption. We affirm the judgment.

## DISCUSSION

### A. *Collateral Estoppel*

■ At the conclusion of argument concerning the claimed entrapment and its effect on the public policy exception to federal preemption, the

district court made the following ruling: "Well, I think it's an issue that probably will have to be resolved, either here or in state court. It would seem to me that we we're talking about section 301. We're also talking about the public policy of the state. I think the best way to handle that is to let the state decide their own public policy. So I'm going to grant the motion and send it back, on the basis that the public policy is tantamount or equal to a violation of the statute. . . .

" . . . . . . . . . . . . . . . . . .

"With reference to the motion to dismiss, or in the alternative for summary judgment, I'll just give an advisory opinion on that because I think it becomes moot in my decision today, but I'll just indicate that I think this matter should be tried, because we're talking about constructive termination, and there you have to look at the facts and true reasons. I think that would be a question of fact."

Moreau contends that in ordering remand, the federal district court found the causes of action contained in his state complaint were not preempted by section 301. He argues this finding is binding on the parties in state court and thus the state trial court should not have found preemption nor granted the motion for summary judgment. Transit argues the federal district court made no such finding.

While there is some uncertainty concerning the finding made by the district court, we do not believe it necessary to determine the precise meaning of its ruling.

In making its jurisdictional determination on a motion for remand, the district court looks no further than the complaint and the motion for removal. This limitation is one aspect of the "well-pled complaint" rule which holds a plaintiff is the "master" of his complaint and he may craft his causes of action, if he so desires, to exclude federal jurisdiction. Under the rule a federal question must appear from the complaint and not from any preemption defense which might be raised in state court and which might ultimately defeat the cause of action. (*Franchise Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1, 9-11 [77 L.Ed.2d 420, 430-432, 103 S.Ct. 2841].)

However, an independent corollary to the "well-pled complaint" rule is the "artful pleading" rule or the "doctrine of complete preemption." This doctrine states that while couched in state contract or tort terms, federal jurisdiction exists if the issues actually raise an essentially federal

question. ■ In this case Transit's claim of preemption both in federal and state court was based on this doctrine.

■ When a federal court grants a motion for remand in the present context, it does nothing more than determine the complaint fails, either directly or by operation of the "artful pleading" doctrine, to state a question arising under federal law. It does not determine whether a preemption defense can be successfully offered in state court when the entire case is considered. As was stated in *Survival Sys.* v. *U.S. Dist. Ct. for S.D. Cal.* (9th Cir. 1987) 825 F.2d 1416, 1418: "In this case, the order of remand did not resolve a matter of substantive law, as in *Pelleport* [*Pelleport Investors* v. *Budco Quality Theatres* (9th Cir. 1984) 741 F.2d 273, 276-278] or *Clorox* [*Clorox* v. *U.S. Dist. Ct. for N.D. of California* (9th Cir. 1985) 779 F.2d 517, 520]. The ruling of the district court was that the state cause of action alleged in Rodriquez's complaint was not an artfully pled federal claim that was preempted by federal labor law. This did not finally resolve the issue of preemption, which could still be raised as a defense to the state claim in state court. Thus, if the proof in the state court were such as to justify the conclusion that the cause of action was completely preempted by federal labor law, the defense of preemption could be sustained. The ruling of the district court was simply that the allegations of the complaint did not justify such a result." (See also *Caterpillar, Inc.* v. *Williams* (1987) 482 U.S. 386, 398, fn. 13 [96 L.Ed.2d 318, 331, 107 S.Ct. 2425]; *Price* v. *PSA, Inc.* (9th Cir. 1987) 829 F.2d 871, 876.)[1]

■ While we cannot determine the exact nature of the district court's determination, it clearly involved only the question of jurisdiction and thus Transit could properly assert its defense of preemption in state court.

B. *Preemption*

■ Moreau argues the trial court erred when it found the state tort actions alleged in his complaint preempted by federal law.

Summary judgment is proper where the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment

---

[1] *Clorox* and *Pelleport* are cases where remand was not predicated on a lack of jurisdiction but rather on substantive legal determinations. In *Clorox* the remand order was based on a substantive determination Clorox waived its right to removal by informing its employees in its employee handbook that suits to recover benefits under the employment plan in question could be filed in either state or federal court. (*Clorox* v. *U.S. Dist. Ct. for N.D. of California* (9th Cir. 1985) 799 F.2d 517, 520-521.) In *Pelleport* remand again was not based on a question of federal jurisdiction but rather on a contract provision between the parties that any disputes arising from the contract would be litigated in state court. (*Pelleport Investors* v. *Budco Quality Theatres* (9th Cir. 1984) 741 F.2d 273, 276.)

as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ If the declarations supporting a motion for summary judgment establish a complete defense or demonstrate the absence of an essential element such that there is no factual matter requiring resolution, the motion is properly granted. (*Rodriguez* v. *Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668 [253 Cal.Rptr. 779]; *Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 633-634 [164 Cal.Rptr. 621].)

■ In this case summary judgment was based on the finding Moreau's state tort actions were preempted by section 301 and any federal claims Moreau might have had were time barred. Therefore, review of the grant of summary judgment requires we explore the question of preemption within the unique context of section 301.

Section 301(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C. § 185(a).)

■ Section 301 creates a federal cause of action for the breach of a collective bargaining agreement. In order to achieve uniformity in the interpretation of such agreements and consistent resolution of labor-management disputes, federal law governs such suits whether brought in state or federal court. In order to assure this uniformity, the preemptive strength of section 301 is extraordinarily strong. (*Lingle* v. *Norge Div. of Magic Chef, Inc.* (1988) 486 U.S. 399, 405-406 [100 L.Ed.2d 410, 418, 108 S.Ct. 1877, 1880]; *Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 103 [7 L.Ed.2d 593, 599, 82 S.Ct. 571, 577]; *Miller* v. *AT & T Network Systems* (9th Cir. 1988) 850 F.2d 543, 545.) Even those suits based upon tort rather than contract causes of action are governed by federal law if resolution of the tort claims is "inextricably intertwined with consideration of the terms of [a] labor contract." (*Allis-Chalmers Corp.* v. *Lueck* (1985) 471 U.S. 202, 213 [85 L.Ed.2d 206, 216, 105 S.Ct. 1904].) Such intertwining of tort and labor contract terms occurs whenever resolution of the state tort claim is substantially dependent upon analysis of the express or implied terms of an agreement made between the parties in a labor contract. (*Id.* at p. 220 [85 L.Ed.2d at p. 221]; *Lingle* v. *Norge Div. of Magic Chef, Inc., supra,* 486 U.S. at p. 412 [100 L.Ed.2d at p. 423, 108 S.Ct. at p. 1885]; *Miller* v. *AT & T Network Systems, supra,* 850 F.2d at p. 545; see also *Hanks* v. *General Motors Corp.* (8th Cir. 1988) 859 F.2d 67, 68-70; *Newberry* v. *Pacific Racing*

*Ass'n* (9th Cir. 1988) 854 F.2d 1142, 1146-1147; *Hyles* v. *Mensing* (9th Cir. 1988) 849 F.2d 1213, 1215-1217.)

The extraordinary strength of the preemptive reach of section 301 is, however, tempered by the length of that reach. A mere overlapping of protections or terms found in both a collective bargaining agreement and state law does not necessarily require preemption.

"The mere fact that a CBA contains terms that could govern the same situations that a state law governs does not necessarily mean that the state law requires interpretation of the terms in the CBA. The state law might impose mandatory requirements to which all employment contracts in the state must adhere. If mere overlap were permitted to preempt state law, section 301 would begin to dictate the 'substance of what private parties may agree to in a labor contract.' [Citation.] This approach to section 301 preemption undermines the principle that section 301 should not 'delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavor[ ],' [citation], because under this approach, an employer can become exempt from any state labor standard merely by including terms in its labor agreement that appear to govern similar situations." (*Miller* v. *AT & T Network Systems, supra,* 850 F.2d at p. 547.) Thus "[a]lthough its scope is substantial, section 301 does not preempt every suit concerning employment. If a court can uphold state rights without interpreting the terms of a CBA, allowing suit based on the state rights does not undermine the purpose of section 301 preemption: guaranteeing uniform interpretation of terms in collective bargaining agreements." (*Id.* at pp. 545-546.)

Likewise, simply because a state tort action may involve overlapping attention to the same factual considerations as a contractual determination under a collective bargaining agreement, it does not necessarily follow that the tort action is preempted. The United States Supreme Court stated in *Lingle*: "[W]e disagree with the [appellate] Court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law, on the basis of the subject matter of the law in question, section 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the

claim is 'independent' of the agreement for § 301 pre-emption purposes." (*Lingle* v. *Norge Div. of Magic Chef, Inc., supra,* 486 U.S. at. pp. 408-410 [100 L.Ed.2d at pp. 420-421, 108 S.Ct. at p. 1883], fns. omitted.)

■ Having marked the general borders by which preemption is defined, it remains to be determined if in a given case preemption is compelled. Determination of whether resolution of a state tort claim requires interpretation of a collective bargaining agreement, is a function of examining the terms of the agreement, the elements of the tort involved, the facts which the plaintiff believes support the finding of the tort and the facts which the defendant may assert in defense. (See *Miller* v. *AT & T Network Systems, supra,* 850 F.2d at pp. 548-551; *Hanks* v. *General Motors Corp., supra,* 859 F.2d at pp. 68-70; *Newberry* v. *Pacific Racing Ass'n, supra,* 854 F.2d at pp. 1148-1150.)

■ Article V, section A, subdivision c of the collective bargaining agreement between Transit and Moreau's union states no employee will be discharged or disciplined without "just cause." Article I, section (E), further states Transit is to furnish to its employees both employment and places of employment which are "free from recognized hazards causing, or likely to cause, death or serious physical harm."

Moreau's three causes of action all arise from the same facts surrounding his entrapment, voluntary resignation, ultimate acquittal of the criminal charges filed against him on the ground he was entrapped and his attempt to recover his job and lost pay.[2]

There is no question in this case as to whether Moreau sold illegal drugs to an undercover officer. He did. Rather, the issue presented in the complaint filed by Moreau is whether an employer, in this case Transit, can participate in a law enforcement procedure which ultimately results in an employee being entrapped and then terminate employment based upon conduct resulting from the entrapment. These issues cannot be resolved without deciding whether in requiring "just cause" for "discharge or discipline," the parties to the collective bargaining agreement intended to encompass discharge or discipline arising from entrapment designed to control drug usage in the workplace. Thus, even on its most general level it is apparent this case cannot be decided without resort to interpretation of the terms of the collective bargaining agreement. (Cf., *Lingle* v. *Norge Div. of Magic Chef, Inc., supra,* 486 U.S. 399 [100 L.Ed.2d at p. 423, 108 S.Ct. at

---

[2] No answer was filed by Transit and consequently no factual defenses were asserted. Transit's motion for summary judgment simply contended that because resolution of each of Moreau's claims requires an interpretation of the just cause for dismissal provision of the collective bargaining agreement all actions are preempted.

p. 1885].) Moreover, this conclusion permeates examination of each of the causes of action presented by Moreau.

■ Among the elements which must necessarily be shown in order to establish the tort of intentional infliction of emotional distress is that of extreme and outrageous conduct on the part of the defendant. A claim of outrageous conduct must be premised upon action exceeding "all bounds of decency" which " 'no reasonable man in a civilized society should be expected to endure . . . .' " (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 404, pp. 484-485.) ■ Because this factor requires inquiry into the appropriateness of a defendant's behavior, it is necessary to examine the terms of the collective bargaining agreement. If permitted by the agreement, the conduct of the defendant which has been called into question might be deemed reasonable.

With these observations in mind, we conclude Moreau's claim of intentional infliction of emotional distress is preempted since it is necessary to determine whether Transit's participation in Moreau's entrapment and its discharge of him based on the entrapment exceeded all bounds of decency or instead constituted reasonable actions contemplated by the parties to fall within the "just cause" provision of the collective bargaining agreement.

■ Moreover, although California has a policy preventing criminal sanctions for those entrapped (*People* v. *Benford* (1959) 53 Cal.2d 1, 9 [345 P.2d 928]) and has established the tort of intentional infliction of emotional distress, we perceive no indication whatsoever that parties to a collective bargaining agreement have been prevented by this state from entering into employment agreements which permit the use of entrapment as a basis for just cause for discipline or discharge of employees involved in on-premises drug usage or trafficking.

■ Moreau's cause of action for negligent infliction of emotional distress is likewise preempted. This tort rests upon examination of concepts of duty and causation. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, pp. 194-195, § 732, pp. 60-61.)

The question of whether Transit owed Moreau a duty of care rests upon whether the collective bargaining agreement permits Transit to participate in entrapment procedures which then lead to termination or discharge and thus foreseeably cause emotional harm to the employee involved. There can be no duty of care owed to prevent such harm if entrapment and ensuing dismissal are permitted by the collective bargaining agreement as means of controlling drugs in the workplace. Again the issue resolves itself into whether the term "just cause" encompasses such action by Transit. (See

*Lingle* v. *Norge Div. of Magic Chef, Inc., supra,* 486 U.S. at pp. 405-406, fn. 4 [100 L.Ed.2d at p. 418, 108 S.Ct. at p. 1881].)

▮ The tort of wrongful discharge exists when the "discharge of an employee violates fundamental principles of public policy." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)

▮ Moreau's cause of action for wrongful discharge alleges it is the public policy of this state that employers owe a duty to employees not to engage in entrapping activity. He thus argues Transit "wrongfully and without just cause . . . failed" to rehire him.

Moreau's claim is premised upon the argument California has established a public policy that an employer may not use entrapment in the workplace. As we have noted, while California prohibits criminal sanctions where an individual has been entrapped by officers of the state, no statute or judicial decree prohibits the parties from negotiating concerning the utilization or nonutilization of such techniques in the context of labor-management agreements. (Cf., *People* v. *Benjamin* (1974) 40 Cal.App.3d 1035, 1040 [115 Cal.Rptr. 668].) Nor are we inclined to engraft such a restriction.

Moreau claims, all other considerations aside, his wrongful discharge cause of action survives based on a public policy exception to section 301 preemption. In *Garibaldi* v. *Lucky Food Stores, Inc.* (9th Cir. 1984) 726 F.2d 1367, an employee claimed retaliatory discharge based on his report to state authorities that his employer instructed him to deliver adulterated milk. The court in *Garibaldi* looked to the tort of wrongful discharge defined in *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167, 176. *Tameny* recognized an employer's obligation not to discharge an employee for refusing to violate a criminal law does not depend on contract terms but rather a general duty imposed by law upon all employers in order to implement the fundamental public policy embodied in the state's penal statutes.

The court in *Garibaldi* found the cause action was not preempted, stating: "A claim grounded in state law for wrongful termination for public policy reasons poses no significant threat to the collective bargaining process; it does not alter the economic relationship between the employer and employee. The remedy is in *tort,* distinct from any contractual remedy an employee might have under the collective bargaining contract. It furthers the state's interest in protecting the general public—an interest which transcends the employment relationship." (*Garibaldi* v. *Lucky Stores, Inc., supra,* 726 F.2d at p. 1375.)

*Garibaldi* was decided before both the United States Supreme Court's decisions in *Allis-Chalmers* and *Lingle*. Following the decisions in those cases, with their requirement preemption occur when it is necessary to interpret a collective bargaining agreement regardless of the cause of action asserted, the *Garibaldi* doctrine was rejected. (*Newberry* v. *Pacific Racing Ass'n, supra,* 854 F.2d at pp. 1148-1149; *Hyles* v. *Mensing, supra,* 849 F.2d at p. 1216.) Thus, while a state may establish a particular cause of action which establishment serves to demonstrate the state's general public policy, preemption will nonetheless occur if under the principles articulated in *Allis-Chalmers* and *Lingle* it is necessary to interpret the pertinent collective bargaining agreement. A state's public policy, no matter how strongly reflected by its statutes, is in itself an insufficient barrier to preemption in the face of such a necessary interpretation. (See *Newberry* v. *Pacific Racing Ass'n, supra,* 854 F.2d at pp. 1147-1150.)[3]

## C. *Nonnegotiable Rights*

■ Even where a state has expressly or impliedly indicated a right or remedy is "non-negotiable" and thus not subject to negotiation or inclusion in collective bargaining agreements, preemption will nonetheless occur where in exerting the right in state court, the parties must resort to interpreting the terms of the agreement. As the Supreme Court has noted: "Petitioner points to the fact that the Illinois right to be free from retaliatory discharge is nonnegotiable and applies to unionized and nonunionized workers alike. While it may be true that most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by § 301. Similarly, if a law applied to all state workers but required, at least in certain instances, collective-bargaining agreement interpretation, the application of the law in those instances would be pre-empted. Conversely, a law could cover only unionized workers but remain unpre-empted if no collective-bargaining agreement interpretation was needed to resolve claims brought thereunder." (*Lingle* v. *Norge Div. of Magic Chef, Inc., supra,* 486 U.S. at pp. 407-408, fn. 7 [100 L.Ed.2d at p. 420, 108 S.Ct. at p. 1882].) (Compare *Miller* v. *AT & T Network Systems, supra,* at p. 550.)

While California has, by virtue of its established tort remedies, articulated general public policy, it has not prevented parties to collective bargaining

---

[3] Inasmuch as public policy is no longer regarded as an exception preventing preemption, *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] is not applicable here.

agreements from negotiating the methods or means by which drug-related problems may be dealt with in the workplace. Thus we conclude there is no nonnegotiable right involved in this case. Even if such a nonnegotiable right could be found to exist, preemption would still occur inasmuch as resort to the agreement and application of the "just cause" provision would be necessary in resolving the specific tort actions brought in this case.

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1989. Mosk, J., was of the opinion that the petition should be granted.