[No. B135132. Second Dist., Div. Four. July 20, 2001.]

ROBERT HANSEN, Plaintiff and Respondent, v.
AEROSPACE DEFENSE RELATED INDUSTRY DISTRICT LODGE
725 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, Defendant and Appellant.

MARLA DES ERMIA, Plaintiff and Respondent, v.
AEROSPACE DEFENSE RELATED INDUSTRY DISTRICT LODGE
725 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, Defendant and Appellant.

978

COUNSEL

Morrison & Foerster, Lisa Von Der Mehden and B. Scott Silverman for Defendant and Appellant.

Allison Beck; Van Bourg, Weinberg, Roger & Rosenfeld and David A. Rosenfeld for International Association of Machinists & Aerospace Workers as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Sanford L. Horn and Sanford L. Horn for Plaintiffs and Respondents.

## OPINION

**HASTINGS, J.**—Appellant Aerospace Defense Related Industry District Lodge 725 of the International Association of Machinists and Aerospace

Workers (appellant) is a subordinate unit of a labor union that represents aerospace workers. Respondents Robert Hansen and Marla Des Ermia are two former employees of appellant who pursued wrongful termination claims against it. Their cases were consolidated prior to trial. Hansen obtained a jury verdict in the amount of $335,000 plus punitive damages of $17,782. Des Ermia was awarded $368,000 plus punitive damages in the amount of $17,782. Appellant appeals. We reverse the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

### Des Ermia

Des Ermia was a clerical employee in appellant's Burbank office. In January 1996, she called appellant's regional office and reported that her office manager, Barbara Powley, had made unauthorized purchases with her union credit card. Appellant's president, Calvin Duncan, reported the matter to the union office and an independent investigator was assigned to the matter. The investigator subsequently concluded that Powley had not intentionally misused the union credit card. Duncan, however, suspended Powley for 30 days without pay.[1]

Des Ermia was laid off in January 1997. The stated reason given by appellant was that the Burbank office was being closed and her position had been eliminated. Des Ermia filed this lawsuit in January 1998, alleging that she had been wrongfully terminated because of the Powley incident. She initially filed her suit in state court, alleging causes of action for violation of public policy and intentional infliction of emotional distress. It was removed to federal court. The United States District Court judge dismissed the emotional distress claim, finding it to be preempted by the Labor Management Relations Act, 29 United States Code section 151 et seq. (LMRA), and declined to exercise supplemental jurisdiction of the public policy claim. Des Ermia's first amended complaint, refiled in state court on September 15, 1998, alleged only a single cause of action for violation of public policy.

### Hansen

Hansen was the business representative for appellant. In or around February 1996, a one-page leaflet was distributed to union members criticizing the way in which the Powley incident had been handled. The authors of the leaflet identified themselves only as "the Over-the-Hill Gang." Approximately one month later, another leaflet written by the Over-the-Hill Gang was distributed, criticizing President Duncan about union financial matters.

[1]The circumstances surrounding Powley's suspension shall hereinafter be referred to as "the Powley incident."

Hansen made comments regarding the leaflets to certain rank-and-file union members, essentially agreeing with the accusations made in the leaflets, but he denied writing the leaflets.

In May 1996, President Duncan terminated Hansen's employment, giving the reason that Hansen had made disparaging remarks about appellant's leadership and had attempted to undermine Duncan's authority.

Hansen filed his lawsuit on May 27, 1997, for wrongful termination in violation of public policy. The complaint was initially filed in state court, alleging causes of action for (1) discharge in violation of public policy; (2) breach of employment agreement; (3) breach of the implied covenant of good faith and fair dealing and (4) intentional infliction of emotional distress.

The case was removed to United States District Court. The district court judge dismissed the claims for breach of employment agreement and breach of the implied covenant of good faith and fair dealing, finding these claims were preempted by the Labor Management Reporting and Disclosure Act of 1959, 29 United States Code sections 401-531 (LMRDA). Upon remand to state court, the emotional distress claim was dismissed on summary judgment. Only the public policy cause of action proceeded to trial.

Des Ermia's case was consolidated with Hansen's for trial in October 1999.

## DISCUSSION

### 1. *Preemption*

Appellant contends, among other things, that both Hansen's and Des Ermia's claims are preempted by federal law.

#### a. *Hansen*

The LMRDA guarantees to every member of a labor organization the rights of equal voting, free speech and assembly. (29 U.S.C. § 411.) It also makes it unlawful for a union to "fine, suspend, expel, or otherwise discipline" any of its members for exercising those rights (29 U.S.C. § 529), and allows any person whose rights have been violated to bring a lawsuit in federal district court. (29 U.S.C. § 412.) ■ Appellant contends, therefore, that Hansen's claims against it are preempted by the LMRDA. In support of its argument for preemption, appellant relies primarily on *Finnegan v. Leu* (1982) 456 U.S. 431 [102 S.Ct. 1867, 72 L.Ed.2d 239].

In *Finnegan v. Leu, supra,* 456 U.S. 431, a union president discharged his appointed business agents. The agents filed suit, claiming a violation of the LMRDA. In holding that the LMRDA did not protect the discharged agents, the Supreme Court held that: "[T]he [LMRDA]'s overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections. [Citation.] Far from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election. [¶] . . . Nothing in the [LMRDA] evinces a congressional intent to alter the traditional pattern which would permit a union president under these circumstances to appoint agents of his choice to carry out his policies. [¶] . . . in enacting Title I of the [LMRDA], Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff. Rather, its concerns were with promoting union democracy, and protecting the rights of union *members* from arbitrary action by the union or its officers." (*Id.* at pp. 441-442 [102 S.Ct. at p. 1873].)

In *Screen Extras Guild, Inc. v. Superior Court* (1990) 51 Cal.3d 1017 [275 Cal.Rptr. 395, 800 P.2d 873], a business agent appointed by the union was discharged and brought an action in state court against the union for wrongful discharge, defamation and negligent and intentional infliction of emotional distress. The Supreme Court held that the action was preempted by the LMRDA, stating that: "Elected union officials must necessarily rely on their appointed representatives to carry out their programs and policies. As a result, courts have recognized that the ability of elected union officials to select their own administrators is an integral part of ensuring that union administrations are responsive to the will of union members. [Citations.]" (*Id.* at pp. 1024-1025.) The court also noted: "[W]hile the Court of Appeal thought it important for the purposes of preemption analysis to distinguish between claims against a union that relate to the purposes of the LMRDA and claims that are routine disputes between an employer and employee, the reverse is actually the case. It is important *not* to base a preemption rule on such a subjective distinction. To do so would permit wrongful discharge claims against unions by business agents that would inhibit the ability of elected union officials to freely choose their staffs and would thus impermissibly frustrate full realization of the goals of the LMRDA. [Citation.]" (*Id.* at p. 1028.)

In *Sheet Metal Workers v. Lynn* (1989) 488 U.S. 347 [109 S.Ct. 639, 102 L.Ed.2d 700], another discharged business agent brought a lawsuit against a

local union, claiming a violation of the LMRDA. The Supreme Court held that *Finnegan* did not control because the business agent was an elected, rather than an appointed official. It stated: "The consequences of the removal of an elected official are much different. To begin with, when an elected official . . . is removed from his post, the union members are denied the representative of their choice." (*Sheet Metal Workers, supra,* at p. 355 [109 S.Ct. at p. 644-645].) The agent was therefore allowed to maintain his cause of action under section 102 of the LMRDA (29 U.S.C. § 412).

Respondents argue that *Lynn,* not *Finnegan* or *Screen Extras,* controls because Hansen became a business agent pursuant to an election and was performing the same duties for which he was elected when he was discharged. This reasoning masks the true facts, however. Hansen was initially elected to the post of business agent for District Lodge 720 in 1993. In January 1994, the union was reorganized and District Lodge 720 and a few other districts were merged into District Lodge 725, the appellant in this action. Calvin Duncan became the president of the new district, and pursuant to its new bylaws, appointed Hansen as its business representative.

The stated reasons given for Hansen's termination were his poor performance, and his insubordination in criticizing the management of the district. Duncan had the right to have an appointed business agent who supported his agenda. Accordingly, Hansen's claim for wrongful discharge was preempted by the LMRDA. (*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at p. 1032.)

b. *Des Ermia*

▮▮▮ Section 301 LMRA, 29 United States Code section 185,[2] preempts state law claims that are based directly on a collective bargaining agreement or are substantially dependent on an interpretation of a collective bargaining agreement. (*Wooddell v. Electrical Workers* (1991) 502 U.S. 93, 101-102 [112 S.Ct. 494, 499-500, 116 L.Ed.2d 419]; *Aguilera v. Pirelli Armstrong Tire Corp.* (9th Cir. 2000) 223 F.3d 1010, 1014.)

Des Ermia contends that her lawsuit only peripherally involves the collective bargaining agreement and therefore should not be preempted for that reason. She argues that interpretation of the collective bargaining agreement

---

[2] Section 301(a) states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C. § 185(a).)

was not necessary to a resolve the dispute; the jury was not asked to analyze the contractual terms of the agreement.

Des Ermia was initially an elected officer of the union's District Lodge 727. That lodge and others were merged to form District Lodge 725 (appellant) in January 1994 and Des Ermia lost her position. After the merger, the appellant's office manager offered Des Ermia work as a clerical employee. As a clerical worker for appellant, the terms and conditions of Des Ermia's employment were governed by a collective bargaining agreement (CBA) between appellant and a local branch of the Office and Professional Employees International Union. The CBA provided that in "all cases involving . . . layoffs, seniority based on continuous service with the employer shall govern." The CBA also provided that seniority would be by regional "Area." When Des Ermia was terminated, she was told that it was due to the lack of work resulting from the closure of the Burbank office.

Des Ermia's claim is that she was terminated for pretextual reasons—that interpretation of the CBA was only necessary to determine evidence relating to motive and calculation of the proper measure of damages, citing *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399 [108 S.Ct. 1877, 100 L.Ed.2d 410]. In *Lingle*, a worker who filed a workers' compensation claim was terminated because the employer felt the claim was false. The worker's union filed a grievance which was sent to arbitration pursuant to the collective bargaining agreement. An arbitrator ruled in the worker's favor and ordered her reinstated. She then filed a wrongful discharge suit which was removed to federal court. The employer filed a motion to dismiss on preemption grounds. The United States Supreme Court held that although the dispute involved a factual inquiry into the conduct and motivation of the employer, it did not require the court to interpret the collective bargaining agreement and held that there was no preemption. (*Id.* at pp. 409-410 [108 S.Ct. at pp. 1883-1884].)

One of Des Ermia's main allegations was that appellant violated the CBA by laying her off before other, less senior, employees. Des Ermia argued that her "seniority date" under article 16 of the CBA was January 1, 1994, the date she became secretary-treasurer for District Lodge 727. Appellant argued that her seniority date was March 1994, the date that she became a clerical employee for the Burbank office. Des Ermia also argued that the district violated the CBA by denying her a position in another area office and by failing to recall her after her layoff when another clerical employee quit and that she was wrongfully denied vacation and sick leave pay.

In order to find there was a pretext for laying her off, the jury necessarily had to find that she was laid off out of seniority order, or that appellant

violated the provisions of the CBA. Interpretation of the CBA was therefore a prerequisite to resolution of her claim. As a result, her claim was preempted by the LMRA.

#### c.  *Effect of District Court's Prior Ruling*

■ Both Hansen and Des Ermia argue that because the United States District Court only dismissed certain causes of action and remanded the remainder of each case back to state court, the remanded causes of action cannot now be deemed federal causes of action. The fact that the federal court did not retain each case at the pleading case, however, does not constitute a pronouncement that the remaining causes of action were state court causes of action. "When a federal court grants a motion for remand [to the state court], it does nothing more than determine the complaint fails, either directly or by operation of the 'artful pleading' doctrine, to state a question arising under federal law. It does not determine whether a preemption defense can be successfully offered in state court when the entire case is considered." (*Moreau v. San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 621 [258 Cal.Rptr. 647].)

### 2.  *Violation of Public Policy*

Respondents contend that because their claims involve an alleged violation of public policy, the preemption doctrine does not apply. ■ With respect to Hansen, they argue that there is a substantial state interest in ensuring that employees are not discharged because they voice their opposition to management policy. In Hansen's case, however, he was employed as a business agent, and therefore was a representative of union management. It was therefore clearly within the president's rights to discharge him for voicing his contrary views.

Hansen relies on *Bloom v. General Truck Drivers* (9th Cir. 1986) 783 F.2d 1356, claiming that one of the reasons he was discharged was because he refused to conceal the facts surrounding Powley's embezzlement of union funds. This allegation was contained in his complaint; however Hansen did not establish at trial that he had reported criminal behavior or that he refused to aid and abet any criminal acts. In addition, Hansen alleged that Powley had not been bonded. However, any evidence on this issue was excluded at trial. All Hansen was able to prove at trial was that he was discharged because of his remarks criticizing Duncan's performance. For this reason, *Bloom* is inapposite.

■ As far as Des Ermia, the charge was that she was laid off in retaliation for her reporting that her supervisor was misusing appellant's

funds. But because appellant asserted a legitimatereason for her termination, interpretation of the CBA was required. "A state's public policy, no matter how strongly reflected by its statutes, is in itself an insufficient barrier to preemption in the face of such a necessary interpretation. [Citation.]" (*Moreau v. San Diego Transit Corp., supra,* 210 Cal.App.3d at p. 627.)

### DISPOSITION

The judgments are reversed. The matter is remanded to the superior courts with instructions to dismiss the two lawsuits. (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 220 [105 S.Ct. 1904, 1915-1916, 85 L.Ed.2d 206].) The parties are to bear their own costs.

Vogel (C. S.), P. J., and Epstein, J., concured.

The petition of all respondents for review by the Supreme Court was denied October 31, 2001.